IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARA FLAMM,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **SARNER & ASSOCIATES, P.C.,** | : | |
| et al., | : | |
| | : | |
| **Defendant.** | : | NO.  02-4302 |

Reed, S.J.                                                                                                   November 6, 2002

**M E M O R A N D U M**

    This action arises out of the efforts of defendants to collect a debt from plaintiff.  Plaintiff has brought suit against her physician Jodi Brown, M.D. ("Dr. Brown"), her physician's attorneys Joshua and Leonard Sarner and their firm of Sarner & Associates, P.C. (collectively, "Sarner Defendants"), and process server John Matusavage ("Mr. Matusavage").  Plaintiff alleges claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., as well as under Pennsylvania state law for violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C. S. § 201-1, et seq., intentional infliction of emotional distress, defamation and civil conspiracy.  Defendants have moved to dismiss the FDCPA claim asserted for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  They have further moved to dismiss the remaining claims for lack of jurisdiction.  For reasons articulated below, the motions to dismiss will be granted in part and denied in part.[1]

---

[1] The Court will grant the motions of the Sarner Defendants and Mr. Matusavage for leave to reply, (Doc. Nos. 17, 20), and has correspondingly considered the replies in determining the instant motions for dismissal.  Mr. Matusavage has also moved to disqualify plaintiff's counsel.  (Doc. No. 14.)  Because plaintiff has voluntarily changed counsel, the motion to disqualify will be denied as moot.  Finally, although the Sarner Defendants have filed various attachments, on which Mr. Matusavage also relies, that are outside the ken of review upon a motion to dismiss, the Court has not relied upon any of the attachments in reaching its decision today.

**Factual Background**[2]

Plaintiff Mara Flamm ("Ms. Flamm") was sued by Dr. Brown in the Municipal Court of Philadelphia County for $5000. On or about April 4, 2001, the Municipal Court of Philadelphia County entered a default judgment in favor of Dr. Brown and against Ms. Flamm in the amount of $6,215 plus $65 in costs. On or about October 26, 2001, Mr. Matusavage served a Notice of Deposition in Aid or Execution ("Notice") on plaintiff by leaving a copy with plaintiff's supervisor at Peirce College where plaintiff was employed. Mr. Matusavage informed plaintiff's supervisor that plaintiff owed a large debt to a doctor.

On January 25, 2002, Mr. Matusavage again appeared at Peirce College and demanded to see plaintiff, plaintiff's supervisor, the Dean of the College, and their secretaries.[3] Carnita Rutling ("Ms. Rutling"), an administrative assistant of Peirce College, spoke with the process server at the request of campus security. Mr. Matusavage asked Ms. Rutling to accept a package on behalf of plaintiff and further requested to speak with Ms. Rutling in private. Upon following her to a room near by, he began to yell in a loud and aggressive tone. Mr. Matusavage stated, "I don't know what type of sneaky little thieves you hire, but Mara Flamm stole thousands of dollars from a doctor and hasn't paid." He complained that he and the Sarner Defendants had been going to Peirce College for over two years and that plaintiff was always unavailable. When Ms. Rutling advised Mr. Matusavage that the information was none of her business, and that he should contact plaintiff at home, Mr. Matusavage remarked that plaintiff had given them a false

---

[2] All facts are taken as true from the complaint, as required by law.

[3] As Mr. Matusavage's identity on his second visit to Peirce College was unknown to plaintiff, the complaint names a "John Doe Process Server" as a defendant. The motion to dismiss of the Sarner Defendants confirmed that the unknown process server was in fact Mr. Matusavage. (Sarner. Def. Mot. at 4.)

home address and phone number. He further stated that plaintiff had received services for which she refused to pay and that she failed to appear in court. Mr. Matusavage then reiterated that plaintiff was a thief, and that if plaintiff was the type of person Peirce College had working for them, the school was in trouble. Finally, he requested that Ms. Rutling inform plaintiff that the next time they had to go to her place of employment, they would bring a sheriff and have plaintiff arrested.

**Legal Standard**

Rule 12 (b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12 (b) (6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843 (1969). Because the Federal Rules of Civil Procedure require only notice pleading, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a). A motion to dismiss should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984).

**Analysis**

**A.    Count I – FDCPA Claims**

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses." 15 U.S.C. §1692(e). It is uncontested that the money owed by Ms. Flamm constitutes a "debt" as defined in 15 U.S.C. § 1692a(5). In Count I of the complaint, plaintiff claims that the acts of defendants were abusive debt collection practices within the meaning of the statute. Defendants have moved to dismiss by contesting the allegation that they were "debt collectors" as defined by the FDCPA.

**1.    Dr. Brown**

Dr. Brown asserts that because she is a "creditor" rather than a "debt collector" as defined in the FDCPA, she is not subject to its dictates.[4] A "debt collector" is defined by the FDCPA, in relevant part, as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, <u>the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.</u> For the purpose of section 1692f of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal business of which is the enforcement of security interests. The term does not include-
>
> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

---

[4] A creditor is defined as
any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.
15 U.S.C. § 1692a(4).

> (C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;
>
> (D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;
>
> (E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6) (emphasis added).

Generally the FDCPA does not govern the activities of a creditor attempting to collect on debts owed directly to themselves. See Gary v. Goldman & Co., 180 F. Supp. 2d 668, 672 (E.D. Pa. 2002) (citing Pollice v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000). This is likely because "creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill. . . ." Aubert v. American Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998) (quoted in Pollice, 225 F.3d at 403). Nevertheless, under the statute, the term "debt collector" includes creditors "who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts by indicating that a third person was collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). In her response to Dr. Brown's motion, plaintiff maintains that Dr. Brown used the name of the Sarner defendants to collect on her own debt, and thus falls

within the definition of "debt collector."

A creditor collects its own debts by using a different name, implying that a third party was the debt collector, when the creditor either used an alias, see Pressman v. Southeastern Financial Group, Inc., No. CIV. A. 94-5244, 1995 U.S. Dist. LEXIS 17961 (E.D. Pa. Nov. 30, 1995), or "controlled almost all aspects of debt collection." Harrison v. NBD Inc., 968 F. Supp. 837, 843 (E.D.N.Y. 1997). For example, a creditor was found to be a "debt collector" where the creditor, and not its attorney, operated an automated system that selected the defaulted accounts, mailed and printed the attorney's letters from its office, and received and handled any responses or payments elicited from those letters with the attorney through communication channels maintained by the creditor. See Young v. Citicorp Retail Servs., 3:95 CV1504, 1997 U.S. Dist. LEXIS 22669, at *10 (D. Conn. May 20, 1997), aff'd No. 97-9397, U.S. App. LEXIS 20268 (2d Cir. June 29, 1998). This prohibited practice is known as "flat-rating," in which a collection agency receives a flat fee based on the number of demand letters sent bearing the collection agency letterhead, but is otherwise not involved in the collection of the debt. See Sokolski v. Trans Union Corp., 53 F. Supp. 2d 307, 312 (E.D.N.Y. 1999) (finding flat-rating where collection agency furnished collection letters but neither received nor reviewed debtors' files, sent all received correspondence directly to creditor, had no authority to negotiate debt collection and received only flat fee for letters sent). In contrast, a creditor who retains an independent unaffiliated debt collector is not a "debt collector" herself, regardless of whether she approves of the debt collector's practices. Harrison, 968 F. Supp. at 843.

Nowhere in her complaint does plaintiff allege that Dr. Brown used a third party's name to collect upon her debt. The statute makes clear that a creditor must be in the process of

collecting her own debt under the name of a third party, and the case law has shown that she must control almost all aspects of the debt collection process for the creditor to be deemed a "debt collector." Although Ms. Flamm alleges that Dr. Brown "controlled, directed, supervised, and/or approved the actions of [the other defendants] with respect to the collection of a debt allegedly owed from Plaintiff," (Compl. ¶ 8), the subsequent allegations specify that Dr. Brown hired a law firm, who itself independently hired Mr. Matusavage and undertook collection activities. Nothing in the complaint hints at any prohibited flat-rating practice on the part of Dr. Brown. Mere approval or encouragement by a creditor of aggressive or even abusive collection tactics is insufficient to render her a "debt collector" under the FDCPA. I therefore find that Dr. Brown is a creditor and not a "debt collector" within the meaning of the statute.

Further, the Court concludes that Dr. Brown is not vicariously liable for any actions by her attorneys under the FDCPA. "[A]n entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." Pollice, 225 F.3d at 404. Conversely, a creditor that does not itself meet the definition of a "debt collector" is not vicariously liable. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996) (quoted in Pollice, 225 F.3d at 404). Because I find that Dr. Brown is not herself a "debt collector" under the allegations of the complaint, I conclude that plaintiff has not stated a claim for relief against her under the FDCPA. I will therefore grant the motion to dismiss Count I of the complaint as against Dr. Brown.

**2.    Sarner Defendants**

The Sarner Defendants have also moved for dismissal based on the theory that they are not "debt collectors" within the meaning of the statute. They premise this theory on the fact that

the statute exempts from its definition "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). The Sarner Defendants claim that because Mr. Matusavage was serving legal process upon plaintiff on the occasion in question, they fall within this exemption.

Plaintiff does not contest that the package delivered to Ms. Rutling was indeed legal process (Pl. Resp. to Matusavage Mot. at 7), but rather challenges it as improper service under the Pennsylvania Rules of Civil Procedure. Nevertheless, plaintiff fails to cite any cases or statutory language to support her argument that, as in the exercise of jurisdiction, service must be proper to exempt a process server from the statute. I find that the argument is at odds with the plain face of the statutory language which provides that an attempt at service is sufficient. Plaintiff herself admits that defendants "twice attempted to serve Plaintiff at Peirce College," (Id. at 10), and I find that an attempt at service at a debtor's place of employment is reasonable. Thus, the nature of the service, whether complete or incomplete under the strict rules of Pennsylvania civil procedure, does not prevent the exemption from applying in this instance.

Nevertheless, the process server exemption does not necessarily extend to the persons who hire the process servers. See Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir. 1998) (no exemption for those who prepared communications served). One district court has concluded that "the exemptions do not exclude the actions of third persons . . . who utilize these exempt individuals to violate the act." Alger v. Ganick, O'Brien & Sarin, 35 F. Supp. 2d 148, 153 (D. Mass. 1999) (rejecting notion that debt collector who instructs service processor to "engage in abusive conduct" is shielded from liability). Additionally, under agency principles, the law firm may be vicariously liable for the acts of his authorized or apparent agent under the

-8-

FDCPA. Id. (citing cases). Thus, the fact that the Sarner Defendants requested Mr. Matusavage to serve the process does not render themselves a server of legal process as described in 15 U.S.C. § 1692a(6)(D), nor do these facts alone exclude the Sarner Defendants from the definition of "debt collector." The Sarner Defendants raise no other challenge to plaintiff's allegation that they violated the FDCPA. Thus, the plaintiff's federal claims against the Sarner Defendants will withstand the motion to dismiss.

**3.     Mr. Matusavage**

As with the Sarner Defendants, Mr. Matusavage seeks to exclude himself from the definition of "debt collector" by qualifying for the legal process server exemption. As discussed above, contrary to plaintiff's assertions, the Court determines that Mr. Matusavage's attempts to serve plaintiff at Peirce College falls within the statutory exemption, regardless of whether it constituted proper service under the state civil procedure rules. Plaintiff argues, however, that Mr. Matusavage's actions extended beyond merely serving or attempting to serve, and that he consequently qualifies as a "debt collector" regardless of his legal process server status. No case law nor supportive statutory language have been cited by either side on this issue.

When determining that the law firm that prepared a served document did not itself qualify as a legal process server, the Second Circuit Court of Appeals reasoned as follows:

> By exempting from liability under the FDCPA those individuals whose involvement in a debt collection communication was limited to serving the communication on the consumer – in effect, to being messengers – Congress did not compromise the strength of the FDCPA's protections. To read Congress, instead, as having carved out a wholesale exemption for anyone who prepares a communication – no matter how violative of the safeguards that the FDCPA affords debtors – just because the communication is eventually served on the consumer as a prerequisite to beginning a court proceeding, would not only stretch the statutory language; it would also significantly impede the statute from

remedying the "mischief" to which it was addressed.

Romea, 163 F.3d at 117.  This logic may easily be extended to the case at hand.   I find that a person who goes beyond being merely a messenger in serving legal process and engages in prohibited abusive or harassing activities to force an individual to repay a debt is no longer exempt under the legal process server exception.  At that point, he steps beyond the bounds of the official duties inherent in serving process and takes on a secondary role of "debt collector" as defined within the statute.  To find otherwise would both "stretch the statutory language" and "significantly impede the statute from remedying the 'mischief' to which it was addressed."  Id. Based upon the protective purposes of the FDCPA and the facts as alleged in the complaint, I find that Mr. Matusavage is not exempt from liability through his process server status.  Because Mr. Matusavage does not otherwise challenge plaintiff's allegation that he violated the FDCPA, this claim against Mr. Matusavage will survive the motion to dismiss.

**B.      State Law Claims**

Because the Court will deny the motions to dismiss the FDCPA claims against the Sarner Defendants and Mr. Matusavage, the Court will exercise its supplemental jurisdiction over the remaining claims against all the defendants pursuant to 28 U.S.C. § 1367.  Nevertheless, as Dr. Brown and Mr. Matusavage have both moved for dismissal of the state law claims under Rule 12(b)(6), I will proceed to review these claims on their merits.

**1.      Count II – Unfair Trade Practices and Consumer Protection Law**

Plaintiff alleges generally a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S. § 201-1 et seq.  The UTPCPL prohibits the use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce as defined by the statute. 73 Pa.C.S. § 201-3. Although Mr. Matusavage contests the applicability of the UTPCPL to the alleged abusive conduct at issue, debt collection has been deemed to be activities within trade or commerce as regulated under the UTPCPL. See Pennsylvania Retailers' Assocs., Reliable, Inc. v. Lazin, 426 A.2d 712, 718, 57 Pa. Cmwlth. 232 (1981). Further, pursuant to the UTPCPL, the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), 73 Pa.C.S. §§ 2270.1 et seq., was passed and became effective in June 2000. The PFCEUA established what activities constitute "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 Pa.C.S. § 2270.2. Under the PFCEUA, any act of a debt collector that violates any of the provisions of the FDCPA also violates the PFCEUA. See 73 Pa.C.S. § 2270.4(a). Thus, to the extent plaintiff has alleged a FDCPA claim against the Sarner Defendants and Mr. Matusavage, she has also stated a claim under the PFCEUA and UTPCPL for relief.

Dr. Brown has moved to dismiss all the state claims by denying vicarious liability for any of the actions of the other defendants. Nevertheless, under the PFCEUA, a creditor is directly liable for an enumerated list of prohibited acts independent of the actions of a debt collector. See 73 Pa.C.S. § 2270.4(b). Further, the statute appears to include a catch-all provision: "A creditor may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." 73 Pa.C.S. § 2270.4(b)(4). Plaintiff has alleged that Dr. Brown engaged the Sarner Defendants knowing that they would harass and annoy plaintiff through their debt collection activities; such actions would violate the PFCEUA. Thus, based on the broad language of this prohibition, plaintiff has sufficiently stated a claim for relief to avoid a dismissal of the UTPCL claim against Dr. Brown.

**2. Count III – Intentional Infliction of Emotional Distress**

In Count III of the complaint, plaintiff asserts a claim for intentional infliction of emotional distress. The tort of intentional infliction of emotional distress is defined under Pennsylvania law as "'[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" Shaner v. Synthes (USA), 204 F.3d 494, 507 (3d Cir. 2000) (quoting Hoy v. Angelone, 554 Pa. 134, 150, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of Torts § 46)).[5] "'[C]ourts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven.'" Id. at 508 (quoting Hoy, 720 A.2d at 753-54). Such intentional or reckless conduct by a defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy, 720 A.2d at 754; see Vassallo v. Timoney, 00-CV-84, 2001 U.S. Dist. LEXIS 16781, at *29 (E.D. Pa. Oct. 15, 2001), aff'd, 40 Fed. Appx. 734 (3d Cir. 2002), (citing Clark v. Falls, 890 F.2d 611, 623 (3d Cir. 1989) (reversing verdict for plaintiff who was defamed, falsely referred for prosecution and deprived of First Amendment rights); Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (holding ill-motivated or callous termination of employment insufficient); Motheral v. Burkhart, 400 Pa. Super. 408, 583 A.2d 1180, 1190 (Pa. Super. 1990) (falsely accusing plaintiff of child molestation not sufficient)). I find that the alleged conduct by the defendants, although

---

[5] The Court of Appeals for the Third Circuit has noted that the Pennsylvania Supreme Court has not explicitly adopted the Restatement; however, the court assumed the existence of the tort and appeared to have relied on the Restatement. See Shaner, 204 F.3d at 508 n.18 (citing Hoy, 720 A.2d at 753 n.10).

odious, does not rise to this level of outrageousness. Consequently, I conclude that plaintiff has failed to state a claim for intentional infliction of emotional distress. I will thus grant the motion to dismiss Count III of the complaint as against all defendants.

### 3. Count IV – Defamation - Slander

"A statement is defamatory 'if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Unisource Worldwide, Inc. v. Heller, 99-CV-266, 1999 U.S. Dist. LEXIS 8530, at **8-9 (E.D. Pa. June 9, 1999) (quoting Redco Corp. v. CBS, Inc., 758 F.2d 970, 971 (3d Cir. 1985)). Plaintiff alleges that the statements by Mr. Matusavage to Ms. Rutling were defamatory. Mr. Matusavage argues that because the statements were made in the course of serving legal process, the statements enjoy absolute privilege.

"The doctrine of absolute judicial privilege applies to statements made in the 'regular course of judicial proceedings' that are 'pertinent and material' to the litigation." Todi v. Stursberg, 01-CV-2539, 2001 U.S. Dist. LEXIS 20098, at * 3 (E.D. Pa. Dec. 4, 2001) (quoting Moses v. McWilliams, 379 Pa. Super. 150, 549 A.2d 950, 956 (1988)). Nevertheless, "communications to persons who have no direct interest in the proceedings are not protected." Foglietta v. Daspin, 98-CV-2750, 1998 U.S. Dist. LEXIS 17401, at *10 (E.D. Pa. Oct. 23, 1998) (citing Post v. Mendel, 510 Pa. 213, 507 A.2d 351, 357 (1986)). Plaintiff alleges that Mr. Matusavage relayed the communications at issue to Ms. Rutling, a person with no direct or indirect interest in the judicial proceeding between Ms. Flamm and Dr. Brown. Such communications are neither "pertinent' nor "material" to the litigation, regardless of whether they were made during the course of serving legal process. Consequently, I conclude they do not

enjoy absolute immunity.

Although there may be a limited form of immunity for statements made outside of judicial proceedings, I still find that the alleged statements are not immune.

> Statements made outside a judicial proceeding may be afforded a qualified, or conditional privilege if (1) they are a fair and accurate report of statements made or pleadings filed in a judicial action; (2) there is no abuse of the privilege – such as over-embellishment – and (3) the out-of-court statements are not uttered for the sole purpose of causing harm.

Kormi v. Kormi, 97-CV-2788, 1998 U.S. Dist. LEXIS 3402, at *11 (E.D. Pa. Mar. 17, 1998), aff'd without opinion, 172 F.3d 859 (3d Cir. 1998), (citing Binder v. Triangle Publications, Inc., 442 Pa. 319, 275 A.2d 53, 56 (1971)). Plaintiff alleges that Mr. Matusavage characterized her as a "thief" who stole thousands of dollars from a doctor. (Compl., ¶ 30.) I find that if made, such statement would constitute an abuse of the privilege in that it over-embellished the nature of the underlying state action against Ms. Flamm. Consequently, I conclude that the alleged statements are not protected by the qualified immunity, and that plaintiff has stated a claim for defamation against Mr. Matusavage.

To state a claim for defamation under Pennsylvania law, plaintiff must plead and prove that the communication was published by the defendant. See 42 Pa.C.S. § 8343(a)(2). Plaintiff has not alleged that either the Sarner Defendants or Dr. Brown made any defamatory statements themselves or repeated any statements allegedly made by Mr. Matusavage. Consequently, they may only be held liable for defamation under a theory of vicarious liability.[6] It is well settled

---

[6] In Computer Aid, Inc. v. Hewlett-Packard Co., 56 F. Supp. 2d 526, 537-38 (E.D. Pa. 1999), the defendant was granted summary judgment on the claim for defamation, where the defendant could be liable only under a theory of vicarious liability, but vicarious liability was never pleaded in the complaint. Id. (citing Schaffer by Schaffer v. A.O. Smith Harvestore Prods., 74 F.3d 722, 731 (6th Cit. 1996)). Similarly, Ms. Flamm has not specifically pleaded a claim for vicarious liability against the Sarner Defendants nor Dr. Brown. Nevertheless, I find that Ms. Flamm has alleged sufficient facts and allegations of agency to put the defendants on notice of such a claim.

under Pennsylvania law that an employer may be held liable for the intentional or criminal acts of its employee only if the wrongful act was committed within the scope of the employment. Michelson v. Exxon Research and Engineering Co., 808 F.2d 1005, 1007 (3d Cir. 1987) (citing Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1276 (3d Cir. 1979) (en banc)); Fala v. Perrier Group of Am., No. 99-CV-3319, 2000 U.S. Dist. LEXIS 7218, at *13 (E.D. Pa. May 25, 2000); Dee v. Marriott Int'l, Inc., No. Civ. A. 99-2459, 1999 U.S. Dist. LEXIS 16159, at **7-9 (E.D. Pa. Oct. 6, 1999); Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 39 (Pa. Super. Ct. 2000); R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 699 (Pa. Super. Ct. 2000); Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998). Pennsylvania has adopted the Restatement's definition of conduct within the scope of employment:

> (1) [I]t is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

Costa, 708 A.2d at 493 (citing Fitzgerald v. McCutcheon, 270 Pa. Super. 102, 410 A.2d 1270, 1272 (Pa. Super. 1979); RESTATEMENT (SECOND) OF AGENCY § 228 (1958)).

Plaintiff has alleged that the Sarner Defendants employed or contracted with Mr. Matusavage as a process server and debt collector, and that Mr. Matusavage acted in this capacity within the scope of his employment at the time of the alleged tortious conduct. (Compl., ¶¶ 13-14.) In other words, Ms. Flamm has pleaded that Mr. Matusavage was hired to harass and annoy plaintiff to pressure Ms. Flamm to repay her debts. The Court cannot say at this stage of the

---

See Yacoub v. Lehigh Valley Med. Assocs., P.C., 805 A.2d 579, 588-89 (Pa. Super. Ct. 2002) (facts read in conjunction with other allegations in complaint sufficiently provided hospital defendant with adequate notice of malpractice claim based on agency liability).

proceedings that the alleged statements were made outside of the scope of Mr. Matusavage's employment. Consequently, the claim for defamation as against the Sarner Defendants will also survive the motion to dismiss.

Similarly, the claim for defamation against Dr. Brown must survive at this junction. Dr. Brown contends that a client is not vicariously liable for the negligence of her attorneys, citing to I & S Assocs. Trust v. LaSalle Nat'l Bank, 99-CV-4596, 2001 U.S. Dist. LEXIS 15223, at **13-4 (E.D. Pa. Sept. 26, 2001). Nevertheless, defamation is an intentional tort. See Computer Aid, Inc. v. Hewlett-Packard Co., 56 F. Supp. 2d 526, 539 (E.D. Pa. 1999). A client may not be subject to vicarious liability for intentional torts committed by the attorney unless the client authorized or ratified the commission of the tort. Cf. Computer Aid., 56 F. Supp. 2d at 538 (citing cases) (granting summary judgment to client on defamation claim) (dictum noting evidence showed no ratification of defamatory action by attorney). Ms. Flamm has alleged that Dr. Brown actively approved and encouraged the defamatory action, which may constitute ratification of the alleged tortious conduct. I thus conclude that the plaintiff has stated a claim for defamation, and the motion of Dr. Brown to dismiss the defamation claim will be denied.

**4. Count V – Civil Conspiracy**

Plaintiff has asserted a claim for civil conspiracy under Count V of the complaint. "Under Pennsylvania law, a civil conspiracy requires (1) 'two or more person who combine or agree with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means,' and (2) 'proof of malice, i.e., an intent to injure.'" Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc., 187 F. Supp. 2d 400, 410 (W.D. Pa. 2002) (quoting Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (1979)). "[T]o survive a motion to dismiss on

the conspiracy claim, the plaintiff's complaint need only describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy." Jairett v. First Montauk Sec. Corp., 203 F.R.D. 181, 187-88 (E.D. Pa. 2001) (internal quotation marks and citations omitted). Plaintiff has alleged that the named defendants conspired with malice to compel plaintiff to repay her debt through means of harassment and coercion. (Compl. ¶¶ 70- 72.) I find that read broadly, the allegations sufficiently plead that Dr. Brown hired the Sarner Defendants, who in turn hired Mr. Matusavage, with the purpose of collecting the debt owed to Dr. Brown, in a manner that violated federal and state law, and I further conclude that plaintiff has stated a claim for civil conspiracy. Consequently, the motions to dismiss the civil conspiracy claim will be denied.

**Conclusion**

For the foregoing reasons, plaintiff has stated a claim for relief under the FDCPA against the Sarner Defendants and Mr. Matusavage, and has stated claims for relief for violations of the UTPCL, defamation, and civil conspiracy against all of the defendants. Consequently, the motions to dismiss will be granted in part and denied in part. Count I of the complaint will be dismissed as against Dr. Brown, and Count III of the complaint will be dismissed as against all of the defendants.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARA FLAMM,** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **SARNER & ASSOCIATES, P.C.,** | : | |
| et al., | : | |
| | : | |
| Defendant. | : | NO. 02-4302 |

**O R D E R**

**AND NOW**, this 6th day of November, 2002, upon consideration of the motion of defendant Jodi H. Brown, M.D. to dismiss (Doc. No. 11), the motion of defendants Joshua Sarner, Leonard Sarner and Sarner & Associates, P.C. (collectively, "Sarner Defendants") to dismiss (Doc. No. 10), and the motion of defendant John Matusavage to dismiss and disqualify counsel (Doc. No. 14), the responses of plaintiff (Docs. No. 15 - 16, 18), the motions for leave to reply (Doc. Nos. 17, 20), and the sur-replies thereto, and for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED** as follows:

1. The motions of the Sarner Defendants and John Matusavage for leave to reply (Doc. Nos. 17, 20) are **GRANTED**.

3. The motion of Jodi H. Brown, M.D. to dismiss is **GRANTED IN PART AND DENIED IN PART**, and Counts I and III of the complaint are dismissed as to defendant Jodi H. Brown, M.D.

3. The motion of the Sarner Defendants to dismiss is **GRANTED IN PART AND DENIED IN PART**, and Count III of the complaint is dismissed as against defendants

        Joshua Sarner, Leonard Sarner and Sarner & Associates, P.C..

4.     The motion of to dismiss of John Matusavage is **GRANTED IN PART AND DENIED IN PART**, and Count III of the complaint is dismissed as against defendant John Matusavage. The motion of John Matusavage to disqualify plaintiff's counsel (Doc. No. 14) is **DENIED** as moot.

        **IT IS FURTHER ORDERED** that the defendants shall answer the remaining allegations of the complaint no later than December 9, 2002.

_____

LOWELL A. REED, JR., S.J.