IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARA FLAMM, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 02-4302 |
| SARNER & ASSOCIATES, P.C. and JOSHUA SARNER, ESQUIRE and LEONARD SARNER, ESQUIRE and JODI H. BROWN, M.D. and JOHN MATUSAVAGE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
ATTORNEY DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT
OR, IN THE ALTERNATIVE,
DEFENDANTS MOTION TO DISMISS COUNT III OF
PLAINTIFFS' PROPOSED AMENDED COMPLAINT**

**I.   INTRODUCTION**

Plaintiff, a judgment debtor who has ignored and evaded the legal process of Pennsylvania state courts for years, has filed this action against the following defendants:

- Jodi H. Brown, M.D. - - a physician who provided extensive medical services which the plaintiff accepted, and then refused to pay, even after Dr. Brown obtained a judgment against the plaintiff;

- Sarner & Associates, P.C., Leonard Sarner, Esquire,[1] and Joshua Sarner, Esquire (collectively "attorney defendants") - - counsel who represented Dr. Brown in

---

[1] It is expressly denied that Leonard Sarner, Esquire, is a proper party to this action, as he did not participate in the representation of Dr. Brown with respect to Dr. Brown's claim against the plaintiff.

successfully obtaining a civil judgment and then attempting lawful execution in support of that judgment;

- John Matusavage - - a process server who attempted to serve plaintiff with process on several occasions.

On January 2, 2003, the plaintiff filed the instant Motion for Leave to Amend Complaint, and included a copy of her Amended Complaint as an exhibit thereto. In her Proposed Amended Complaint, plaintiff alleges that the filing of an Objection to Discharge with the United States Bankruptcy Court constitutes "harassment, oppression and/or abuse" within the meaning of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa.C.S.A. § 2270.4(a). This new claim is without legal merit because, in any matter concerning pleadings before the United States Bankruptcy Court, the procedural provisions of the United States Bankruptcy Code supercede state laws, such as Pennsylvania's FCEUA. Plaintiff has, in fact, admitted that she has or is in the process of pursuing remedies against the attorney defendants through the federal Bankruptcy Court.[2] Moreover, the provisions of the FCEUA do not apply to the filing of pleadings such as the Objection to Discharge.

Plaintiff's attempt to incorporate by reference her putative claims under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter "FDCPA"), as claims under the FCEUA must also fail, because the FCEUA bars duplicative prosecution of the same claims under both its provisions and those of the FDCPA.

Due to the fact that her new proposed claims under the FCEUA are without merit, attorney defendants respectively request that the Court deny plaintiff's Motion for Leave to Amend the Complaint. In the alternative, attorney defendants respectfully request that the Court

---

[2] Proposed Amended Complaint at ¶ 47 and ¶ 49.

:401265-1

2

dismiss Count III of the Proposed Amended Complaint and strike the factual allegations set forth in paragraphs 38 through 49 of the Proposed Amended Complaint, which relate solely to the attorney defendants' filing of papers in the United States Bankruptcy Court.

## II.     FACTUAL AND PROCEDURAL HISTORY

In the Fall of 2000, Mr. Sarner attempted, unsuccessfully, to communicate with the plaintiff about the long, overdue medical bills that she owed to Dr. Brown. As a result, Dr. Brown filed a Statement of Claim with the Philadelphia Municipal Court. Although this Statement of Claim was properly served, plaintiff entered no defense and, on April 4, 2001, a Default Judgment was entered in the amount of $6,280.50 in favor of Dr. Brown against plaintiff.[3] The Default Judgment was properly served and plaintiff, once again, took no action and made no response.

Thereafter, on October 18, 2001, approximately one year after Mr. Sarner began attempting to communicate with the plaintiff about her unpaid medical bills, Mr. Sarner wrote plaintiff via first-class and certified mail and enclosed a Notice of Taking Deposition in Aid of Execution of the aforesaid Default Judgment.[4] In addition, Mr. Sarner also forwarded the aforesaid Notice of Taking Deposition in Aid of Execution to plaintiff via certified mail and personal service at her place of business at Peirce College in Philadelphia. Mr. Matusavage

---

[3] See Statement of Claim, a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 2; see also Default Judgment a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 3.

[4] See October 18, 2001 letter, Josh Sarner to Plaintiff, a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 4.

served the aforesaid Notice of Deposition on plaintiff's supervisor, Ms. Perkins on October 26, 2001 (although the Affidavit of Service incorrectly shows the year to be "2000").[5]

The attorney defendants attempted to take the deposition of the plaintiff on December 5, 2001, as scheduled in the aforesaid Notice of Deposition, but the plaintiff, Mara Flamm, did not appear, which is reflected in the transcript of the deposition.[6]

Thereafter, on January 22, 2002, Mr. Sarner served plaintiff via certified mail and first-class mail at both her home and place of business with a Court-ordered Rule to Show Cause and Petition to Compel Oral Deposition in Aid of Execution of Defendant, Mara Flamm.[7] In addition, Mr. Sarner requested that Mr. Matusavage serve the aforesaid Rule to Show Cause and Petition on the plaintiff at her place of business, which he did as per the enclosed Return of Service of January 25, 2002 at 1:12 p.m. (although the return incorrectly lists the date of January 24, 2002), a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 9.

In the interim, and unbeknownst to any of the attorney defendants, plaintiff filed a petition under the Bankruptcy Code, which entitled her to an automatic stay against the enforcement of any claim or legal proceedings. After plaintiff filed for bankruptcy, her attorney communicated the filing of a Chapter 7 petition to Mr. Sarner, but waited until after all attempts had been made to serve plaintiff with the Rule to Show Cause and Petition to Compel Oral

---

[5] See Domestic Return Receipt, a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 5; see also Affidavit of Service, a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 6.

[6] See December 5, 2001 Deposition Transcript in Jodi H. Brown, M.D. v. Mara Flamm, a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 7.

[7] See January 22, 2002 letter, Josh Sarner to Plaintiff (cc: Robert P. Brand, Esquire), a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 8.

Deposition, including the personal service that Mr. Matusavage completed at Peirce College on January 25th.[8]

Following the service of a legal notice upon attorney defendants concerning plaintiff's Petition in Bankruptcy, the attorney defendants filed an Objection to Discharge of the amounts owing to Dr. Brown under the Pennsylvania state court judgment.[9] In her Proposed Amended Complaint, plaintiff alleges that the attorney defendants had knowledge that the plaintiff did not possess assets to satisfy the judgment filed against her on behalf of Dr. Brown.[10] Plaintiff further alleges that attorney defendants did not possess the requisite experience to file the Objection to Discharge, and that the filing was therefore improper.[11] On July 8, 2002, a hearing was held to determine, *inter alia*, whether the plaintiff would be required to respond to Dr. Brown's objection to the discharge.[12] Following that hearing, Dr. Brown (through the attorney defendants) withdrew her Objection to the Discharge.[13] Plaintiff sought sanctions against attorney defendants, which sanctions are still subject to the consideration of the Honorable Kevin J. Carey of the United States Bankruptcy Court for the Eastern District of Pennsylvania.[14]

---

[8] See January 25, 2002 letter, Jane MacElhenney to Joshua Sarner (sent via facsimile on 1/25/02 at 2:38 p.m.), a copy of which is attached to attorney defendants' Motion to Dismiss the plaintiff's (original) Complaint as Exhibit 10.

[9] Proposed Amended Complaint at ¶ 39.

[10] Id. at ¶ 72.

[11] Id. at ¶¶ 43, 71 and 73.

[12] Id. at ¶ 42.

[13] Id. at ¶ 44 (Praecipe to Withdraw the Objection filed on July 15, 2002) and ¶ 46 (Praecipe to Withdraw the Objection accepted by the Court on August 19, 2002).

[14] Id. at ¶ 47 (Judge Carey denies oral request for sanctions on August 19, 2002); ¶ 48 (plaintiff files a separate motion for sanctions under Rule 9011); ¶ 49 (Judge Carey convenes hearing on plaintiff's motion for sanctions and takes the matter under advisement). Although the plaintiff alleges that a hearing concerning sanctions occurred on November 4, 2002, the dockets for the plaintiff's bankruptcy action

Plaintiff purports to bring this action as an aggrieved consumer under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), arising from the service of a Court Order and other documents relating to the collection of a judgment against the plaintiff.[15]  The jurisdiction of this Court is predicated solely upon the federal question presented by the plaintiff's FDCPA claim.[16]  In addition, plaintiff alleges a number of state law claims, sounding in Pennsylvania's Consumer Protection Law, 73 Pa.C.S.A. § 201-1, *et seq.* (Count II), Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa.C.S. § 2270.1 *et seq.* (Count III); Defamation - Slander (Count IV) and Civil Conspiracy (Count V).

The primary change reflected in the plaintiff's Proposed Amended Complaint is the addition of allegations concerning the attorney defendants' submission of documents in the plaintiff's pending bankruptcy action (Proposed Amended Complaint at ¶¶ 38 - 49) and the inclusion of a new cause of action alleging that the filing of an Objection to the Discharge in bankruptcy (which Objection was later voluntarily withdrawn) constitutes "harassment, oppression and/or abuse" under Pennsylvania's FCEUA. *Id.* at ¶ 74.  In Count III, plaintiff also alleges, for the first time, that the defendants' alleged violations of the FDCPA also constitute violations of the FCEUA.

---

show that a second hearing was held on December 4, 2002, concerning the same motion for sanctions.  A true and correct copy of the docket for Bankruptcy Petition #02-10951 (Mara Dori Flamm) is attached hereto as Exhibit A (hereinafter "Ex. A").

The docket in the plaintiff's bankruptcy action also shows that plaintiff's bankruptcy proceedings have not yet terminated.  Ex. A (Case Summary).  The docket does not show that the plaintiff obtained permission from the Bankruptcy Court to proceed with the instant action, which was not initiated as a adversary proceeding but which may result in the accumulation of assets to the plaintiff's bankruptcy estate.  Due to the pendency of the plaintiff's bankruptcy action, this Court may lack jurisdiction to proceed with this action under the automatic stay provisions of the United States Bankruptcy Code.

[15] See Proposed Amended Complaint at ¶¶s 24-37; Count I.

[16] Proposed Amended Complaint at ¶ 1.

The defendants in this action respectively filed Motions to Dismiss the original Complaint,[17] which were granted in part and denied in part by this Court. The plaintiff's purported claim for intentional infliction of emotional distress was dismissed against all parties and the plaintiff's purported claim under the Fair Debt Collections Practices Act was dismissed against Dr. Brown. The remaining allegations of the (original) Complaint remained and have been answered by all defendants.

## III.   LEGAL STANDARD

A motion to amend a pleading may be denied if the amended pleading fails to set forth a cause of action within the meaning of F.R.Civ.P. 12(b)(6). Amader v. Johns-Manville Corp. 514 F.Supp. 1031, 1033 (D.C.Pa. 1981)("when the proposed amendment fails to state a claim upon which relief can be granted, the motion [to amend] should, and will, be denied."); see also Bauchman v. West High School, 132 F.3d 542, 559 (10th Cir.) *cert. den'd* 118 S.Ct. 2370, 524 U.S. 953 (1997)(motion to amend denied as futile as no new claim stated); see also Wright, Miller & Kane, Federal Practice and Procedure 2d at ¶ 1487 at n. 26 (motion to amend may be denied if amendment cannot survive a challenge under 12(b)(6)).

A court must dismiss under F.R.Civ.P. 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims as pled which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations raised in the complaint must be assumed to be true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The complaint should be construed liberally in the non-movant's favor, giving that party the benefit of all fair inferences which may be drawn from the allegations. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). This standard is also applied when considering dismissal for lack

---

[17] Attorney defendants incorporate by reference their Motion to Dismiss the (original) Complaint, including all exhibits thereto, as if the same were set forth at length herein.

of original jurisdiction under F.R.Civ.P. 12(b)(1). NE HUB Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3rd Cir. 2001).

IV. **LEGAL ARGUMENT**

    A. **PENNSYLVANIA'S FCEUA MAY NOT BE USED TO OBTAIN SANCTIONS ARISING FROM CONDUCT BEFORE THE UNITED STATES BANKRUPTCY COURT.**

In Count III of her Proposed Amended Complaint, plaintiff is improperly seeking to sanction the attorney defendants (as well as Dr. Brown and, as currently pled, Mr. Matusavage) for their professional conduct before the United States Bankruptcy Court.[18] Plaintiff seeks to sanction the defendants in this action despite the fact that plaintiff is currently seeking sanctions against attorney defendants from the Bankruptcy Court for the same conduct.[19] Even if plaintiff were permitted to simultaneously seek the same relief from the same conduct in two forums (which attorney defendants deny), she is prohibited from using a state statute to punish a party for submitting allegedly improper filings to the federal Bankruptcy Court.

Both federal courts and the courts of the Commonwealth of Pennsylvania have held that the internal provisions of the United States Bankruptcy Code and the Rules of Procedure in Bankruptcy preempt and preclude state law claims arising from a party's conduct before the Bankruptcy Court. MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 912-16 (1996); Gonzales v. Parks, 830 F.2d 1033, 1035-37 (9th Cir. 1987); Shiner v. Moriarty, 706 A.2d 1228, 1237-38 (Pa.Super. 1998); see also Glannon v. Garrett & Associates, Inc., 261 B.R. 259, 263-67 (D.Kan. 2001)(discussing the various authorities concerning preemption of state law claims concerning bankruptcy matters/procedure).

---

[18] Proposed Amended Complaint at ¶¶ 38 - 49, ¶¶ 69 - 75.

[19] Proposed Amended Complaint at ¶ 48 and ¶ 49; See also Ex. B (motion for sanctions still pending as of the date of the filing of this Memorandum).

For example, in Gonzales, the claimant (Parks) argued that a debtor (Gonzales), committed an abuse of process under California law by filing a bankruptcy petition in order to avoid foreclosure proceedings against the debtor's real property. 830 F.2d at 1033-34. The claimant filed her abuse of process claim in California state court, resulting in a default judgment that was challenged by the debtor in a subsequent adversary proceeding. Id. The Ninth Circuit Court of Appeals found that the filing of bankruptcy petitions "are a matter of exclusive federal jurisdiction" such that a state law claim could not be filed in state court based upon the filing of a pleading in bankruptcy. Id. at 1035. The court in Gonzales stated:

> State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating. Cf. Siravo v. Siravo, 424 A.2d 1047, 1049-50 (R.I. 1981)(because the bankruptcy courts have exclusive jurisdiction over bankruptcy, a bankruptcy court's determination that a section of the Bankruptcy Act is unconstitutional may not be challenged in a state court). The ability collaterally to attack bankruptcy petitions in the state courts would also threaten the uniformity of federal bankruptcy law, a uniformity required by the Constitution. U.S.Const. art.I § 8, cl. 4.

830 F.2d at 1035.

A similar legal issue arose in MSR Exploration, Ltd., only this time the debtor (MSR) filed a malicious prosecution claim in United States district court against several creditors who filed objections to the debtor's bankruptcy petition. 74 F.3d at 911-912. The court in MSR Exploration, Ltd. held that there were compelling reasons why state law claims should not be allowed to interfere with the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code" (Id. at 914) including: 1) Congress' express and exclusive grant of jurisdiction

in bankruptcy matters to the federal courts (Id. at 913); 2) Congress' express intent to create a detailed system for the handling of bankruptcy claims (Id. at 914); 3) the need for national uniformity in bankruptcy matters (Id. at 914-915, citing The Federalist, No. 42); and 4) the inclusion of "a number of remedies designed to preclude the misuse of the bankruptcy process" (Id. at 915). The Ninth Circuit further opined:

> Debtor's petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution. Those possibilities might gravely affect the already complicated processes of the bankruptcy court. [citations omitted]. Of course, the opportunities for asserting malicious prosecution claims would only be limited by the fertility of the pleader's mind and by the laws of the state in which the proceeding took place.
>
> In short, the highly complex laws needed to constitute bankruptcy court and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought by state malicious prosecution actions. To put it another way, the problem here is not only one of state courts deciding issues of federal law one way or another. That is not an entirely unique situation, even when uniformity is required. [citation omitted]. The difficulty here goes much deeper. It is a question of state courts, in effect, interfering with the whole complex, reticulated bankruptcy process itself. . . .

74 F.3d at 914.

The Ninth Circuit's reasoning in MSR Exploration, Ltd. was adopted by the Pennsylvania Superior Court in Shiner, where the state court held that claimants could not pursue a statutory cause of action for wrongful use of civil proceedings against a debtor who made numerous unsuccessful filings to the Bankruptcy Court to reassert the automatic stay, which had been lifted by the federal court. 706 A.2d at 1234. Claimants argued that the debtors repeated attempts to obtain a stay, and thereby avoid their eviction from a commercial property, were improper under Pennsylvania's Dragonetti statute, 42 Pa.C.S.A. § 8351 et seq. The Superior Court reversed the

jury verdict in favor of the claimants, who were to recover a total of $361,000 against the debtors for emotional distress ($300,000), attorneys' fees ($40,000) and lost rent ($21,000). The <u>Shiner</u> Court held that "the Bankruptcy Code permits no state law remedies for the abuse of its provisions." <u>Id</u>. at 1238.

In the instant action, plaintiff improperly seeks to use a state statute, the FCEUA, as a source to assert an impermissible sanction arising from the attorney defendant's conduct before the Bankruptcy Court. In Count III of the Proposed Amended Complaint,[20] plaintiff claims that the attorney defendants' filing of an Objection to the Discharge constituted "harassment, oppression and/or abuse" within the meaning of the FCEUA.[21] Plaintiff's putative FCEUA claim is similar to the state law claims raised in <u>Gonzales</u>, <u>MSR Exploration, Ltd.</u>, and <u>Shiner</u> - - in each case, the claimant seeks to use a provision of state law to exact sanctions for actions undertaken before the Bankruptcy Court. And, like state law claims raised in <u>Gonzales</u>, <u>MSR Exploration, Ltd.</u>, and <u>Shiner</u>, the plaintiff's putative FCEUA claim must fail because the exclusive remedy for an allegedly improper filing before the United States Bankruptcy Court must be found in the Bankruptcy Code.

As discussed above, the case law on point states that state law remedies concerning the conduct of litigation before the Bankruptcy Court, whether that remedy sounds in wrongful use of civil proceedings or in consumer protection or some other state law protection, cannot be applied to the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code." <u>MSR Exploration, Ltd.,</u> 74 F.3d at 914. Plaintiff cannot be allowed to employ the provisions of the FCEUA to place additional burdens upon parties filing objections, or any other

---

[20] Although the allegations of this Count refer only to Dr. Brown, its caption states that it is being asserted by plaintiff against all defendants. Proposed Amended Complaint at Count III. Attorney defendants therefore assume that this putative claim has been asserted against them, as well as Dr. Brown.

pleading, in the Bankruptcy Court. For this reason alone, plaintiff's Motion to Amend Count III of her Proposed Amended Complaint to set forth a claim against the attorney defendants for their role in representing Dr. Brown's interests before the United States Bankruptcy Court must be denied. In the alternative, attorney defendants respectfully request that the Court dismiss and strike Count III of the Proposed Amended Complaint, which fails to set forth a cognizable cause of action under the FCEUA.

### B. THE FCEUA SPECIFICALLY EXEMPTS THE FILING OF LEGAL PROCESS, SUCH AS THE OBJECTION TO DISCHARGE, FROM ITS DEFINITION OF "DEBT COLLECTOR".

Even if the attorney defendants could be found to be "debt collectors" under the FCEUA (which attorney defendants deny), the FCEUA does not apply to the service of discovery, pleadings or the use of legal process to reduce a debt to a judgment. 73 P.S. § 2270.3(Definitions - Debt collector"). Specifically, the FCEUA's definition of "debt collector" states:

> (3) The term does include:
>
> (ii) An attorney, whenever such attorney attempts to collect a debt, as herein defined, <u>except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment.</u>

73 P.S. § 2270.3 (emphasis added).

Plaintiff's putative claim that the filing of the Objection to Discharge may apply to attorney defendants (Count III) must fail when the filing of that Objection is specifically excluded from the provisions of the FCEUA. For this reason, plaintiff's Motion to Amend Count III of her Proposed Amended Complaint fails to set forth a claim against the attorney defendants for their role in representing Dr. Brown's interests before the United States Bankruptcy Court

---

[21] Proposed Amended Complaint at ¶ 74.

must be denied. In the alternative, attorney defendants respectfully request that the Court dismiss and strike Count III of the Proposed Amended Complaint, which fails to set forth a cognizable cause of action under the FCEUA.

### C. PLAINTIFF IS PRECLUDED FROM SIMULTANEOUSLY OBTAINING RELIEF UNDER THE FDCPA AND THE FCEUA FOR PUTATIVE CLAIMS ARISING FROM THE SAME FACTS.

Under the express terms of the FCEUA, a party may not be penalized under both the FCEUA and the FDCPA for the same conduct. Specifically, the FCEUA states:

> **(c)    Remedies**. - Remedies available for violation of this act and the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. § 1692 *et seq.*) shall not be cumulative, and debt collectors who violate this act and the Fair Debt Collection Practices Act shall not incur cumulative penalties.

73 Pa.C.S.A § 2270.5(c).

Contrary to the express provisions of the FCEUA, in paragraph 75 of her Proposed Amended Complaint, plaintiff alleges: "[t]he violations of Defendant under the FDCPA also violate the Pennsylvania Fair Credit Extension Uniformity Act." Even if attorney defendants were found to be "debt collectors" within the meaning of either the FDCPA or the FCEUA (which attorney defendants deny), they could not be prosecuted under both the FDCPA and FCEUA for the same alleged conduct. For this reason, plaintiff's attempt in Count III of her Proposed Amended Complaint to incorporate her putative claims under the FDCPA as claims under the FCEUA must fail, and plaintiff's Motion to Amend the Complaint through the addition of paragraph 75 must be denied. In the alternative, attorney defendants respectfully request that the Court dismiss and strike paragraph 75 of the Proposed Amended Complaint, because, in light of plaintiff's allegations under the FDCPA, paragraph 75 necessarily fails to set forth a cognizable cause of action under the FCEUA.

## IV.   CONCLUSION

For the reasons set forth above, attorney defendants respectfully request that the Court deny plaintiff's Motion to Amend her Complaint, because plaintiff's proposed addition of Count III, alleging a claim under the FCEUA, fails to set forth a cause of action against the attorney defendants.  Plaintiff's purported FCEUA claim concerning the attorney defendant's conduct before the United States Bankruptcy Court is preempted by federal law, the Bankruptcy Code itself.  See Gonzales, MSR Exploration, Ltd., and Shiner.  Plaintiff herself admits that she is currently seeking relief under the provisions of the Bankruptcy Code, specifically, Bankruptcy Rule of Procedure 9011.  In addition, the express provisions of the FCEUA exempt attorneys from liability associated with the filing of legal process, and therefore cannot be held to apply to the actions of attorney defendants before the Bankruptcy Court.  Similarly, the remedy provisions of the FCEUA cannot be cumulatively applied to claims under the FDCPA arising from the same conduct, which precludes plaintiff's attempt to assert a putative FCEUA claim based upon the attorney defendants alleged (and denied) violation of the FDCPA.  For these reasons, the plaintiff's Motion to Amend her Complaint should be denied or, in the alternative, the claims raised in the Amended Complaint should be dismissed pursuant to F.R.Civ.P. 12(b)(6). Two proposed forms of Order are attached hereto for the Court's convenience.

        Respectfully submitted,

        CHRISTIE, PABARUE, MORTENSEN and YOUNG
         A Professional Corporation

By: _____

Dated: _____

JAMES W. CHRISTIE  (I.D. No. 12068)
WILLIAM F. MCDEVITT (I.D. No.: 80206)
Attorneys for Defendants Sarner & Associates, P.C.;
Joshua Sarner, Esquire and Leonard Sarner, Esquire
("Attorney Defendants")

:401265-1

14